# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| The St. Andrews Townhomes Homeowners' Association, Inc. and St. Andrews Townhomes Horizontal Property Regime, | Case No.: 4:09-CV-00382-TLW-TER |
| Plaintiffs, | |
| v. | |
| Beazer Homes USA, Inc. | |
| Defendant, | REPORT AND RECOMMENDATION |
| Beazer Homes Corp., | |
| Third-Party Plaintiff, | |
| v. | |
| Accurate Electric, Inc.; Renee Flanary d/b/a Anchor Masonry; Arias Masonry, LLC; William Flanary d/b/a B & B Masonry; B & W Nursery & Landscaping, Inc.; Concrete, Framing, Construction, Inc. a/k/a CFC, Inc.; Concrete Placement of Myrtle Beach; First Ocean Air, Inc.; Grand Strand Roofing & Siding; Green Scape a/k/a Greenscaper, Inc.; J.R. The Trim Team, LLC; Quick Professional Painting; RWG, Inc.; Sam Eddings d/b/a Sam's Drywall; The Painter & Co.; and Tropicana Pool Supply, Inc., | |
| Third-Party Defendants. | |

## I. INTRODUCTION

This litigation arises out of the construction of the St. Andrews Townhomes Horizontal Property Regime condominium project (the project). Defendant Beazer Homes USA, Inc. is the successor in interest to the original developer of the project. Plaintiffs originally filed this action in the Court of Common Pleas, Horry County, South Carolina on January 7, 2009. Defendant filed a Notice of Removal of the action to this Court along with an Answer on February 13, 2009. Thereafter, Defendant filed an Amended Answer and Third-Party Complaint against the subcontractors involved in the project.

Presently before the Court is Defendant's Motion to Dismiss and/or Compel Arbitration and Stay Proceedings (Document # 77).[1] No responses have been filed to the Motion.[2] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636. This Report and Recommendation is entered for review by the district judge.

## II. FACTUAL ALLEGATIONS

Plaintiffs allege that Defendant breached duties owed to Plaintiffs in the completion and performance of its work in reference to the development, construction, design, oversight and supervision of the St. Andrews Townhouse units. Complaint ¶ 6. They further allege that through the investigation of a forensic engineer, Plaintiffs discovered violations of building codes, good workmanship practices, and manufacturer specifications in the development, construction, design,

---

[1] Also pending are three Motions to Amend the Complaint, a Motion to Consolidate, a Motion to Stay and a separate Motion to Dismiss. However, if this case is subject to mandatory arbitration, the Court lacks jurisdiction over this action. Thus, it is necessary to address the jurisdictional issue first.

[2] See Local Rules 7.06 and 7.08, D.S.C.

oversight and supervision of the project, which have resulted in water intrusion, wood and building material degradation and resulting rot, elevated moisture levels and content in the buildings including, but not limited to, various areas in which water penetration has occurred into the buildings due to faulty construction and other areas of damage. Complaint ¶ 6. Plaintiffs assert causes of action for negligence, breach of express and implied warranty, breach of implied warranties for habitability and fitness for a particular purpose and breach of fiduciary duty. Plaintiffs bring these claims against Beazer as both Developer and General Contractor.

In its Third-party Complaint, Beazer alleges that, to the extent Plaintiff has suffered any recoverable damages, such damages are attributable to the Third-Party Defendants, as subcontractors on the Project. Amended Answer and Third-Party Complaint ¶ 79. Beazer asserts causes of action against Third-Party Defendants for negligence, breach of contract, contractual indemnification, contribution, breach of express/implied warranties and arbitration.

## III.  ARBITRATION AGREEMENTS

This matter involves three separate arbitration agreements. On May 26, 2004, Crossmann, Defendant's predecessor in interest, filed the Master Deed for St. Andrews Townhomes Horizontal Property Regime. Section XIV of the Master Deed provides for the organization of the St. Andrews Townhomes Homeowners' Association, Inc. ("HOA"). Section XXXIX of the Master Deed contains the following mandatory arbitration clause:

> Any and all claims, disputes, demands, actions, and causes of action of every nature and kind which arise out of or are in any manner whatsoever related to the development, design, construction, condition, merchantability, habitability, fitness for purpose, or any other implied or express warranty for the COMMON ELEMENTS or for the individual UNITS at the CONDOMINIUM that is asserted against, GRANTOR and its agents, employees, owners, officers, subcontractors, consultants, successors, or assigns by any entity formed to serve as the

> CONDOMINIUM'S homeowners' association or by any person or entity which now has or hereafter acquires any interest in a UNIT at the CONDOMINIUM shall be subject to and resolved by final and binding arbitration conducted in Horry County, South Carolina pursuant to the terms of the Federal Arbitration Act, 9 U.S.C. 1, et seq. All such claims, disputes, demands, actions, and causes of action shall be asserted in a single arbitration proceeding, and all persons and entities which are subject to this arbitration provision may be joined in said proceeding so that all issues may be resolved in one forum.

Master Deed (attached as Ex. A to Motion).

Beazer contracted with numerous subcontractors and suppliers, including the Third-Party Defendants, to provide labor, services and materials for the construction of the project. Each of the contracts between Beazer and the Third-Party Defendants (the "Subcontracts"), contained the following mandatory arbitration provision:

> Mandatory Binding Arbitration: This provision covers any and all claims or disputes between SUBCONTRACTOR and BUILDER, or parties acting on BUILDER'S behalf, arising out of or relating, directly or indirectly, to SUBCONTRACTOR's performance of the Work, the Agreements, or any breach thereof, whether in tort or in contract, provided, however, that the arbitrator is not authorized to hear or decide any class arbitration proceeding. All such claims and disputes shall be resolved by binding arbitration held in the county and state in which the Project is located, pursuant to the procedures described in this section. . . . Upon its request, the BUILDER shall be entitled to consolidation or joinder of any arbitration involving the BUILDER or SUBCONTRACTOR with related arbitrations involving other parties, including trade SUBCONTRACTORS.

Subcontracts (attached as Exhibits 3-12 to Glover Affidavit).

Finally, Each of the purchase agreements with the purchasers for individual units at St. Andrews ("Purchase Agreement"), contained the following arbitration clause:

> 13. <u>Binding Arbitration</u>: Any controversy arising between the parties related in any way to this Purchase Agreement and/or Seller's limited warranty provided by Seller to Purchaser through the UHIC program requires that all disputes relating to or arising out of the Purchase Agreement and/or Seller's limited warranty to be submitted to binding arbitration for resolution. The binding arbitration proceedings shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 <u>et seq.</u> And the parties

> agree that any controversy shall be submitted to an independent arbitration service upon which the parties agree. The S.C. Uniform Arbitration Act [S.C. Code Ann. § 15-48-10, et seq. (1976)] shall not apply.

Purchase Agreement (attached as Exhibit 1 to Glover Affidavit); see also Glover Aff. ¶ 7.

## IV. DISCUSSION

The purpose of the Federal Arbitration Act (FAA) "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). The FAA "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). While Congress considered the advantage of expeditious resolution of disputes through arbitration in enacting the FAA, its primary purpose was to enforce agreements into which parties have entered. Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468, 478 (1989).

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer, 500 U.S. at 26. The "liberal federal policy favoring arbitration agreements manifested by this provision and the Act as a whole, is at bottom a policy guaranteeing the enforcement of private contractual arrangements; the Act simply 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate.'" Mitsubishi, 473 U.S. at 625 (citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983)).

Initially, the Court must decide if it is proper to resolve the dispute through arbitration. The Court should "engage in a limited review to ensure that the dispute is arbitrable – i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Hooters of America, Inc. v. Phillips, 173 F.3d 933,938 (4th Cir. 1999). In determining the scope of an arbitration provision, the court must look to the factual allegations of the complaint in order to ascertain whether the claims alleged touch a concern or matter covered by the arbitration provision. See J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 319 (4th Cir.1988) (noting that the arbitrability determination centers on "whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim"). Courts are to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration with a healthy regard for the federal policy favoring arbitration. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985)).

In the present case, it is undisputed that all allegations fall within the scope of the arbitration agreements. The scope of the arbitration agreements in this case are very broad and unquestionably encompass the claims asserted by Plaintiff and by Beazer. The Master Deed provides that any and all claims asserted against the Grantor or its successors by any entity formed to serve as the condominium's homeowners' association relating to the development, design, construction, condition, merchantability, habitability, fitness for purpose, or any other implied or express warranty are subject to binding arbitration. Plaintiffs' claims against Beazer clearly fall within this broad provision. Further, the contracts between Beazer and the subcontractors each require that any and all claims between the subcontractors and the builder, Beazer, arising out of or relating, directly or

indirectly, to the subcontractors' performance of their work on the Project or the subcontracting agreement be resolved through binding arbitration. Beazer's claims clearly fall within this provision.

A court should not deny a request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The arbitration clauses at issue in this action clearly cover the asserted disputes. Again, no opposition has been filed to this Motion. Accordingly, this action should proceed to arbitration.

**V.  CONCLUSION**

For the reasons discussed above, the claims raised in the action are subject to binding arbitration. As such, dismissal of this action to pursue arbitration is appropriate. Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F. 3d 707, 709-10 (4th Cir. 2001). Therefore, it is recommended that Defendant/Third-Party Plaintiff Beazer's Motion to Dismiss and/or Compel Arbitration and Stay Proceedings (Document # 77) be granted and this case be dismissed.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 18, 2010
Florence, South Carolina